## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| SYREETA ANNETTE HERRON, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-01034-STA-jay |
| | ) | |
| TRENTON SPECIAL SCHOOL DISTRICT, | ) | |
| | ) | |
|     Defendant. | ) | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Trenton Special School District's Motion for Summary Judgment, filed on January 28, 2020. (ECF No. 35.) Plaintiff responded in opposition on February 25, 2020, to which Defendant replied on March 10, 2020. (ECF Nos. 36, 37.) For the reasons discussed below, the Motion is **DENIED**.

### BACKGROUND[1]

Plaintiff Syreeta Herron filed a Complaint in this Court against Defendant Trenton Special School District ("TSSD") on February 22, 2019, alleging violations of § 504 of the Rehabilitation Act, 29 U.S.C. § 791, et seq., and the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304. (ECF No. 1.) TSSD seeks judgment as a matter of law on all of Plaintiff's claims. In support of its Motion for Summary Judgment, TSSD has asserted that a number of facts are undisputed for purposes of Rule 56. Local Rule 56.1(a) requires a party

---

[1] The facts are stated for the purpose of deciding this motion only. Pursuant to Local Rule 56.1(a), Defendant prepared a statement of undisputed facts. (ECF No. 35-14.) Plaintiff responded to Defendant's statement and attached her own statement of undisputed facts. (ECF No. 36-1.) Defendant responded to Plaintiff's statement of undisputed facts. (ECF No. 37.)

seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a). A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular evidence in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

The non-moving party at summary judgment is required to respond to each of the moving party's statements of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." Local R. 56.1(b). Additionally, the non-moving party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Where the non-moving party asserts that a genuine dispute of material fact exists, the non-moving party must support his or her contention with a "specific citation to the record." Local R. 56.1(b). If the non-moving party fails to demonstrate that a fact is disputed or simply fails to address the moving party's statement of fact properly, the Court will "consider the fact undisputed for purposes" of ruling on the Motion. Fed. R. Civ. P. 56(e)(2); *see also* Local R. 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for

2

purposes of summary judgment.").  Under Rule 56 of the Federal Rules of Civil Procedure, the

Court "need consider only the cited materials" but has discretion to "consider other materials in

the record."  Fed. R. Civ. P. 56(c)(3).

During the 2017/2018 school year,[2] Trenton Elementary School ("TES") employed

Plaintiff Syreeta Herron as a teacher's assistant for a pre-kindergarten special education class

under a one-year contract.  (Def.'s Statement of Undisputed Fact ¶ 1, ECF No. 35-14.)  During

the 2018 spring semester, Plaintiff became the one-on-one assistant for J, a student in her pre-

kindergarten class with severe disabilities, pursuant to his individualized education program

("IEP").  (*Id.* ¶ 7; Pl. Statement of Add'l Facts ¶ 3, ECF No. 36-1 at p. 10.)

While assigned to be the one-on-one assistant for J, Plaintiff still helped with other

students in the classroom when Michelle, the teacher, needed help.[3]  (Pl. Statement of Add'l

Facts ¶ 4.)  Syreeta made complaints that the insufficient student to teacher ratio interfered with

her ability to follow J's IEP.[4]  (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 7; Pl.

---

[2] The length of Plaintiff's employment as a teacher's assistant with TSSD is disputed.  Plaintiff maintains that she worked for TSSD on and off for about 13 years. (Pl. Statement of Add'l Facts ¶ 1.)  Defendant, through Tim Haney, the Director of Schools, contends that she was only employed with TSSD during the 2016/2017 and 2017/2018 school years.  (Def.'s Resp. to Pl.'s Statement of Add'l Facts ¶ 1, ECF No. 37.)

[3] The parties dispute whether the student to teacher ratio failed to comply with any student's IEP or violated any law.  Defendant alleges that Plaintiff was only asked to help with other students when J did not require assistance, negating the need for another teacher in the classroom.  (Def.'s Resp. to Pl.'s Statement of Add'l Facts ¶ 4, 5.)  Plaintiff testified, however, that she believes even this level of diversion of her attention from J was not in compliance with at least his IEP and that the classroom needed another teacher to help with the other students and allow her to focus on J.  (Pl. Statement of Add'l Facts ¶ 4, 5.)

[4] The parties disagree about Plaintiff's level of understanding of J's IEP.  Plaintiff claims that she knew about J's IEP, while Defendant contends that her knowledge was limited to what she was told by Courtnee Wilkes, the Trenton Elementary School Principal and Amy Allen, the Trenton Special School District Special Education Supervisor.  (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 7, 8; Def.'s Statement of Undisputed Fact ¶ 7, 8.)

Statement of Add'l Facts ¶ 5.)   However, school officials indicated to her that helping other students in the room was okay if, at that time, she did not have to pay specific attention to J. (Def.'s Statement of Undisputed Fact ¶ 9.)

Lois Ellison, the Assistant Principal, evaluated Plaintiff on May 8, 2018,[5] and indicated that Plaintiff "meets or exceeds the standards and expectations of Trenton Special School District" in all categories and that she does a "great job" at TES.   (TSSD Paraprofessional Performance Evaluations, ECF No. 36-4 at p. 29–31.)

On May 10, 2018, Plaintiff called the state's child abuse hotline to report that she believed the student-teacher ratio was not in compliance and that students' IEPs were not being followed due to inadequate supervision.[6]   (Def.'s Statement of Undisputed Fact ¶ 2–5.)   On May 14, 2018, State employees investigated the report and specifically observed Plaintiff's pre-kindergarten classroom.   (Def.'s Statement of Undisputed Fact ¶ 10; Pl. Statement of Add'l Facts ¶ 9.)   At 3:03 PM on May 14, 2018, Plaintiff received a text from Ms. Allen requesting to schedule a meeting with Plaintiff and Courtnee Wilkes, the TES Principal.   (Pl. Statement of Add'l Facts ¶ 11.)   Tim Haney, the Director of Schools for TSSD, was in the process of "checking with legal about . . . proceeding with a [non-renewal] letter."   (*Id.* at ¶ 13.)   On May 15, 2018, State employees returned to conduct individual meetings with Plaintiff and Amy Allen, the TSSD Special Education Supervisor.   (Pl. Statement of Add'l Facts ¶ 10.)   Although the State

---

[5] Plaintiff received identical evaluations on December 8, 2016, May 19, 2017, and October 25, 2017.   (TSSD Paraprofessional Performance Evaluation, ECF No. 36-4 at p. 29–34.)

[6] Plaintiff's ability to understand and interpret IEPs, in general, is disputed.   Defendant contends that Plaintiff was not able to read IEPs, never looked at an actual IEP, and never went to an IEP meeting.   (Def.'s Statement of Undisputed Fact ¶ 6.)   Plaintiff alleges that although she did not see or create IEPs, she was aware of them and would sit in on family team meetings where she and the special education teacher would go over the IEP with families of students.   (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 6, ECF No 36-1 at p. 2.)

never issued a formal report, in an email to Ms. Allen, Meg Hall, one of the investigators, indicated that they ultimately deemed the complaint invalid.  (Hall Email, ECF No. 35-3.)

On May 16, 2018, Plaintiff, Ms. Allen, and Ms. Wilkes met.  (*Id.* at ¶ 12.)  Ms. Allen and Ms. Wilkes told Plaintiff not to talk to school staff about the State's investigation, to "stay in [her] own lane," and that TSSD "might not be a place for [her]."  (*Id.*)  Ms. Wilkes and Ms. Allen made a recommendation to Mr. Haney that he not renew Plaintiff's contract the following school year.  (Def.'s Statement of Undisputed Fact ¶ 21.)  Mr. Haney subsequently decided not to renew Plaintiff's employment and generated a letter to notify Plaintiff.  (Def.'s Statement of Undisputed Fact ¶ 18; Letter to Syreeta Herron from Tim Haney, ECF No. 35-4.)  At some point that day, Plaintiff called Mr. Haney to see if she was fired, and he told her that if she had not received a letter from him, she had not been let go.  (Pl. Statement of Add'l Facts ¶ 16.)  On May 17, 2018, Plaintiff received Mr. Haney's letter from Ms. Wilkes.  (*Id.* at ¶ 17.)

The reason for Plaintiff's non-renewal is disputed.  Although Plaintiff never told Mr. Haney, Ms. Wilkes, Ms. Allen, or Ms. Lois Ellison, the TES Assistant Principal, that she made a complaint to the state (Def.'s Statement of Undisputed Fact ¶¶ 12–15), it is disputed whether they knew she was the one who had made the complaint.  (Pl. Resp. to Def.'s Statement of Undisputed Fact ¶¶ 16, 19, 20.)  Plaintiff maintains that the decision not to renew her contract was made because she had reported TES to the State for failing to adequately staff her classroom.  (Pl. Statement of Add'l Facts ¶ 18–28.)  Defendant claims, however, that her contract was not renewed because she (1) constantly complained about her role as a special education assistant, (2) talked about the State coming to the school and investigating, and (3) created a negative environment at the school.  (Def.'s Statement of Undisputed Fact ¶¶ 21.)

STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law." *Id.* at 251–52. The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and the "judge may not make credibility determinations or weigh the evidence." *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

In this Circuit, the nonmoving party must "'put up or shut up' [on] the critical issues of [its] asserted causes of action." *Lord v. Saratoga Cap., Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

6

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

ANALYSIS

Plaintiff alleges that Defendant retaliated against her for advocating on behalf J, a student with disabilities, by not renewing her employment contract for the following school year in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 791, et seq. and the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304.  Defendant has moved for judgment as a matter of law regarding both of Plaintiff's claims.

### I.      *Rehabilitation Act*

An analysis of retaliation under the Rehabilitation Act follows the *McDonnell Douglas* framework.  *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001).  Pursuant to this burden-shifting framework, a plaintiff must first set forth a prima facie case of discrimination.  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

> A prima facie case of retaliation has four elements: 1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an employment action adverse to the plaintiff; and 4) the protected activity and the adverse employment action are causally connected.

*Id.* (citing *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir. 1987)).  The employer then must "articulate some legitimate, nondiscriminatory reason" for its actions.  *McDonnell Douglas*, 411 U.S. at 802.  "[T]he plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination."  *Gribcheck*, 245 F.3d at 550 (citing *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  The plaintiff always retains the ultimate burden of persuasion.  *Id.*

7

Defendant argues that Plaintiff is unable to establish the first, second, and fourth elements of her prima facie case of discrimination:[7]  (1) Plaintiff cannot establish that she engaged in an activity protected under the Rehabilitation Act; (2) Plaintiff cannot establish that TSSD knew she reported the school to the state; and (3) Plaintiff cannot establish the causal connection between the alleged protected activity and the non-renewal of her contract.  Defendant further argues that even if Plaintiff establishes her prima facie case, she cannot establish that TSSD's legitimate, nondiscriminatory reasons for her non-renewal—that she (1) constantly complained about her role as a special education assistant, (2) talked about the State coming to the school and investigating, and (3) created a negative environment at the school—were a mere pretext.

Plaintiff counters that she has established a prima facie case.  She argues that she has shown that she engaged in a protected activity when she reported TES to the State for failing to follow students' IEPs.  She contends that TSSD, through Mr. Haney, Ms. Wilkes, and Ms. Allen, knew or believed that she was the one who made the report.  She also argues that because only a day passed between the State's investigation and TSSD's decision not to renew her contract for the following school year, the close temporal proximity is enough to show causation for purposes of establishing her prima facie case.  She further argues that TSSD's three reasons for their

---

[7] Defendant briefly mentions the third element regarding Plaintiff's demand for front pay and back pay.  In the Sixth Circuit, non-renewal of a contract constitutes adverse employment action for purposes of a retaliation analysis.  *See Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 414 (6th Cir. 2011); *Sowards v. Loudon Cnty., Tenn.*, 203 F.3d 426, 432 (6th Cir. 2000); *Thaddeus–X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (en banc) (pointing to "discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote" as examples of adverse actions in the employment context); *Hicks v. Benton Cnty. Bd. of Educ.*, 222 F. Supp. 3d 613, 638–39 (W.D. Tenn. 2016) ("[A] reasonable jury could conclude that the spectre of not being rehired would dissuade a reasonable person from engaging in the protected activity at issue in this case.").  However, Defendant argues that Plaintiff fulfilled her obligations under the contract for the 2017/2018 school year and was compensated in full by TSSD, pursuant to that contract.  Performance of the initial contract is largely irrelevant to the retaliation analysis, and thus, this Court does not find that summary judgment is not warranted on this ground.

decision not to renew her contract are inconsistent and unsupported by the record.  She contends that her job performance evaluations, coupled with the close temporal proximity of the State's Investigation and the nonrenewal of her contract, confirm that TSSD's alleged legitimate, nondiscriminatory reasons were a mere pretext.

The first element "typically refers to action taken to protest or oppose a statutorily prohibited discrimination." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).  "A special education teacher must do more than merely assist her disabled students in order for there to be protected activity." *Hicks v. Benton Cty. Bd. of Educ.*, 222 F. Supp. 3d 613, 638–39 (W.D. Tenn. 2016) (quoting *Brooks v. Capistrano Unified Sch. Dist.*, 1 F.Supp.3d 1029, 1036 (C.D. Cal. 2014)).  Rather, a special education assistant teacher must "advocate on behalf of her disabled students or protest discrimination perpetrated on them by others." *Id.* (quoting *Brooks*, 1 F.Supp.3d at 1036); *see also Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.,* 595 F.3d 1126, 1132 (10th Cir. 2010) ("attempting to protect the rights of special education students constitutes protected activity under the Rehabilitation Act"); *Montanye v. Wissahickon Sch. Dist.*, 218 F. App'x 126, 131 (3d Cir. 2007) (while "mere assistance to special education students" is not protected, "affirmative action in advocating for, or protesting discrimination related to, unlawful conduct by others" constitutes protected activity); *DeCotiis v. Whittemore*, 842 F.Supp.2d 354, 371–72 (D. Me. 2012) (plaintiff stated claim for § 504 retaliation where it was alleged that her employment contract was not renewed because she advocated for disabled children who were receiving insufficient services from school district).  It is undisputed that Plaintiff called the state Child Abuse Hotline to report that she believed students' IEPs were not being followed.  The Court finds that this action goes beyond mere assistance and at least raises a question of fact as to whether Plaintiff engaged in protected activity.

Central to this dispute is whether Defendant knew that Plaintiff called the Child Abuse Hotline and whether that knowledge caused Defendant not to renew Plaintiff's contract for the following school year.  Defendant argues that TSSD did not know who made the anonymous complaint to the State.  It contends that Ms. Allen and Ms. Wilkes attempted to find out but were unsuccessful.  However, Plaintiff counters that she has proffered undisputed evidence that TSSD knew or at least believed that Plaintiff probably made the report.  First, Plaintiff had previously complained to school officials about not having another teacher in the room so that she could focus on J, and the State subsequently specifically observed her classroom during its investigation into whether students' IEPs were being followed at the school and whether her classroom was adequately staffed.  Further, immediately following the first day of the State's investigation, Ms. Allen sent Plaintiff a text message setting up a meeting in which she was told not to talk about the investigation and to "stay in [her] own lane."  Although it is undisputed that Plaintiff never told any school officials that she had, in fact, made the complaint, this does not require the conclusion that these school officials did not believe she was the one who complained.  The Court finds that Plaintiff has offered sufficient proof to meet her minimal burden to put forth evidence permitting a reasonable inference of that TSSD knew or believed Plaintiff made the anonymous report.

Likewise, the Court finds that Plaintiff has met her burden to put forth evidence permitting a reasonable inference of causation.  "[A] causal connection is established when the plaintiff proffers evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Kirkland v. James*, 657 Fed.Appx. 580, 584 (6th Cir. 2016) (internal alterations & quotation marks omitted).  At the summary judgment stage, the plaintiff must "put forth some evidence to deduce a causal connection between the retaliatory action and

10

the protected activity . . . sufficient to allow an inference that the adverse action would not have been taken had the plaintiff not engaged in protected activity." *Hicks v. Benton Cnty. Bd. of Educ.*, 222 F. Supp. 3d 613, 639–40 (W.D. Tenn. 2016) (quoting *A.C. ex rel J.C. v. Shelby Cnty. Bd. Of Educ.*, 711 F.3d 687, 699 (6th Cir. 2013) (internal citations & quotation marks omitted)).

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) (quoting *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir.2008)).   Here, barely any time lapsed between the State's investigation in Plaintiff's classroom and TSSD's decision not to renew her contract.   She received the letter notifying her that her contract would not be renewed two days after the conclusion of the State's investigation, one day following the meeting with Ms. Wilkes and Ms. Allen in which she was told to "stay in her lane."   The Court finds that, at this stage of the proceedings, this minimal lapse in time between TSSD likely becoming aware of Plaintiff's report to the Child Abuse Hotline and its decision not to renew her contract satisfies the causation element of Plaintiff's prima facie case.

The burden now shifts to TSSD to come forth with a legitimate nondiscriminatory reason for not renewing Plaintiff's position as a teacher's assistant.   According to Defendant, the basis for Mr. Haney's decision to terminate Plaintiff was that Plaintiff (1) constantly complained about her role as a special education assistant, (2) talked about the State coming to the school and investigating, and (3) created a negative environment at the school.   The Court finds that these reasons are legitimate nonpretextual reasons for the decision not to renew Plaintiff's contract.

Plaintiff maintains that these reasons are a mere pretext for retaliation.  A plaintiff can establish pretext by showing that the defendant's asserted reason "(1) lacks a basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action." *M.L. v. Williamson Cnty. Bd. Of Ed.*, 772 F. App'x 287, 292 (6th Cir. 2019) (citing *Vincent  v. Brewer Co.*, 514 F.3d 489, 497 (6th Cir. 2007)). To survive a motion for summary judgment, Plaintiff need prove "only enough to create a *genuine issue* as to whether the rationale was pretextual."  *Whitfield v. Tenn.,* 639 F.3d 253, 260 (6th Cir. 2011).  In evaluating pretext, the "court should consider all probative evidence in the light most favorable to the plaintiff, including the evidence presented in the prima facie stage." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016) (internal alteration omitted).

Defendant argues that the events at issue occurred at the end of the school year, the time when it would normally make staffing decisions for the following school year and that it did, in fact, make the decision not to renew the contracts for another teacher's assistant and two other teachers at that time.  While this may be true, Plaintiff points to several pieces of evidence that call this assertion into question.  Together with her prima facie case, Plaintiff submits that she received nothing but positive performance evaluations during the 2017-18 school year. Although Defendant asserts that she was constantly complaining about her role and created a negative environment at the school, neither of these problems were noted in her evaluations. Defendant argues that Ms. Allen testified that Plaintiff would not take direction from anyone, and Ms. Wilkes testified that Plaintiff breached the confidentiality of students with disabilities by discussing their IEPs with other staff members.  Despite their testimony that these issues motivated their recommendation that Mr. Haney not renew Plaintiff's contract, neither of these problems were noted in Plaintiff's evaluations.  The Court finds that the positive evaluations, the

12

temporal proximity of the State's investigation and the adverse action, and the meeting that occurred between Ms. Wilkes, Ms. Allen, and Plaintiff could lead a reasonable jury to conclude that the proffered reasons for the nonrenewal of her contract either did not actually motivate the adverse action or were insufficient to motivate it.

Based on the foregoing, the Court finds that Plaintiff has created a genuine issue as to whether the rationale offered by the TSSD was pretextual.  Consequently, a reasonable juror could find by a preponderance of the evidence that Plaintiff is entitled to a verdict on this claim, and the Defendant's Motion for Summary Judgment on the § 504 claim is **DENIED**.

## II.     *Tennessee Public Protection Act*

Under the Tennessee Public Protection Act, "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities."  Tenn. Code Ann. § 51-1-304(b).  Accordingly, "[a]ny employee terminated in violation of subsection (b) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled."  *Id.* § 51-1-304(c).  To prevail on a retaliatory discharge claim under the TPPA, a claimant must establish four elements:

> (1) the plaintiff was an employee of the defendant;
> (2) the plaintiff refused to participate in or remain silent about illegal activity;
> (3) the defendant employer discharged or terminated the plaintiff's employment; and
> (4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity.

*Sykes v. Chattanooga Housing Authority*, 343 S.W.3d 18, 27 (Tenn. 2011) (citing *Voss v. Shelter Mut. Ins. Co.*, 958 S.W.2d 342, 344 (Tenn. Ct. App. 1997)).  Defendant does not dispute that Plaintiff was an employee of Defendant and that Defendant did not renew her contract, so only the second and third elements are at issue.

Defendant argues that Plaintiff cannot establish the second element, because she did not have a reasonable belief that any statute or regulation was being violated, specifically because she did not know what statute or regulation was potentially being violated.  However, in her response to this Motion, Plaintiff points the Court to the Individuals with Disabilities Education Act ("IDEA") and Tennessee Code Annotated §§ 49-10-103–1203.  She argues that under the IDEA, specifically 20 U.S.C. § 1414(d)(2), school districts are required to develop and follow IEPs for students with disabilities, and Tennessee law requires each school to ensure "that every child with a disability receives special education and related services designed to meet the child's unique needs" as determined by the child's IEP.  Tenn. Code Ann. §§ 49-10-103, 114.  Plaintiff has shown that she knew that J's IEP required that he have a one-on-one assistant, and Plaintiff has also shown that she was required to help the teacher with other students in the classroom when J did not require assistance.  Therefore, this Court finds that Plaintiff has at least created a genuine dispute of material fact as to whether she reasonably believed that TSSD was violating the law when she made the report to the Child Abuse Hotline.

The parties finally dispute whether Plaintiff has demonstrated a genuine issue of material fact regarding the fourth prong of the prima facie case—i.e. that retaliation was the exclusive cause of Defendant's decision not to renew her contract.  The court recognizes that under the TPPA, Plaintiff must demonstrate that Defendant discharged her *solely* because of her refusal to remain silent about the school's violation of students' IEPs.  However, the court concludes that the evidence discussed in the context of Plaintiff's Rehabilitation Act claim here also raises a genuine dispute as to material facts regarding why TSSD did not renew her contract and, by extension, whether retaliation was the sole motivating factor.

14

Based on the foregoing, a reasonable juror could find by a preponderance of the evidence that Plaintiff is entitled to a verdict on this claim, and the Defendant's motion for summary judgment on the TPPA claim is **DENIED**.

### CONCLUSION

The Court holds that Defendant Trenten Special School District is not entitled to judgment as a matter of law on either Plaintiff's claim for retaliatory discharge under § 504 of the Rehabilitation Act, 29 U.S.C. § 791, et seq. or under the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304.  Therefore, Defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: June 4, 2020.