IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

**SYREETA A. HERRON,**

    **Plaintiff,**

**V.**                                                                                   Case No. 1:19-cv-01034-STA-jay

**TRENTON SPECIAL SCHOOL DISTRICT,**

    **Defendant.**

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND NON-TAXABLE EXPENESES IN PART**

---

Before the Court is Plaintiff's counsel's Motion for Attorney Fees and Expenses filed on July 23, 2021. (ECF No. 101.) Also before the Court is a Response in Opposition (ECF No. 103) and a Reply (ECF No. 106.) Counsel for the Plaintiff seek attorney fees and non-taxable expenses pursuant to Rule 54(d)of the Federal Rules of Civil Procedure and 29 U.S.C. § 794a(b) and Tenn. Code Ann. § 50-1-304(c)(2), in the amount of $226,867.50 in attorney fees and $2,259.42 in non-taxable expenses. For the following reasons, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

On February 22, 2019, Plaintiff Syreeta Herron filed a Complaint in this Court against Defendant, Trenton Special School District ("TSSD"), alleging violations of § 504 of the Rehabilitation Act, 29 U.S.C. § 791, et seq., and the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304. (ECF No. 1) Plaintiff, who was employed with TSSD as a teacher's assistant in a special education classroom at Trenton Elementary School, alleged that Defendant

1

discharged her in retaliation for reporting the school's alleged violative student-teacher ratio to the state. Defendant, in turn, argued that Plaintiff's non-renewal was caused by her unprofessional behavior, breach of student confidentiality, and fostering a negative environment at the school. In her Complaint, Plaintiff sought a judgment against the Defendant for compensatory damages for pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss and enjoyment of life, non-pecuniary losses, front pay, reasonable attorney fees and costs, and pre- and post-judgment interest. (*Id*.) The parties proceeded to trial on June 21, 2021. Appearing on behalf of the Plaintiff were Charles Barnett, III, Sara Barnett, and Charles Barnett, IV. Attorneys Jennifer Craig and Katherine Wallace represented the Defendant. The trial took place over four days, the jury rendering a verdict in favor of the Plaintiff at the end of the fourth day on both the Rehabilitation Act claim and the claim under the Tennessee Public Protection Act. At trial, Plaintiff sought an award of back pay and compensatory damages in the amount of, at least, $50,000. The jury awarded Plaintiff $13,000 in back pay and benefits and no compensatory damages. (*See* Judgment at ¶ 2.) Plaintiff now seeks $226,867.50 in attorney fees and $2,259.42 in non-taxable expenses. Defendant has filed a Response requesting that the Court apply an unspecified percentage reduction of the Plaintiff's requested attorney fees to make the fees proportional to the damages award and that the Court exclude all duplicative and clerical billing entries and exclude time entries related to mediation costs.

## STANDARD OF REVIEW

Tenn. Code Ann. § 50-1-304 provides that, "any employee terminated in violation of subsection (b) solely for refusing to participate in, or for refusing to remain silent about, illegal activities who prevails in a cause of action against an employer for retaliatory discharge for the actions shall be entitled to recover *reasonable* attorney fees and costs." 29 U.S.C.A. § 794a

2

similarly allows the court to award the prevailing party reasonable attorney fees, according to its discretion.

"The most useful starting point for determining the amount of a reasonable fee is" the lodestar amount, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939–40, 76 L. Ed. 2d 40 (1983). Calculating the lodestar amount "does not end the inquiry," however. *Id.* at 434, 103 S.Ct. 1933. The district court also should exclude from this initial fee calculation hours that were not reasonably expended. "Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. *Hensley*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939–40, 76 L. Ed. 2d 40 (citing *Copeland v. Marshall,* 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (emphasis in original)).

"There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.* The twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.* "may be relevant in adjusting the lodestar amount," *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *Murphy v. Vaive Wood Prod. Co.*, 802 F. App'x 930, 935–36 (6th Cir. 2020). The *Johnson* factors include, (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,

and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

## ANALYSYS

In determining reasonable fees and costs, the Court must determine the "lodestar amount," or the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This amount may be adjusted upon consideration of the circumstances and characteristics of the case. Defendant argues that Plaintiff's counsel billed entries for purely administrative tasks, that they billed excessively for duplicative tasks, and that Plaintiff often used three attorneys for tasks that required one or, at most, two attorneys.

As to the first point, the Court finds that Plaintiff's fee request does include improper billing for certain administrative tasks done by paralegals. Those tasks cited by Defendant in their Response are inappropriately billed. Such tasks include preparation of correspondence to opposing counsel, preparing documents, preparing deposition schedules, calls to the Court's case manager, review of Court deadlines, compiling lists of exhibits, "attempting" to run Lexis searches for witnesses' residential addresses, calculating mileage fees for witnesses, and preparing binders of documents. (*See* Resp at ¶ 8-9.) In their Reply, Plaintiff does not dispute that the billing entries cited by Defendant are clerical in nature. Rather, Plaintiff asserts that clerical and secretarial staff put many hours of work into the case and that work done by paralegals would have otherwise been done by attorneys.

It may be the case that, in the absence of paralegals, attorneys may have to organize binders or prepare schedules, but that does not make the nature of the work any less clerical because it is performed by attorneys. By the same token, work is not legal merely because it is done by attorneys. *See Gunther v. Comm'r of Soc. Sec.*, 943 F. Supp. 2d 797, 804–05 (N.D. Ohio 2013)

4

(citing *Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ("purely clerical or secretarial tasks should not be billed" under fee shifting statutes, "regardless of who performs them.") The instant motion is for attorney fees; therefore the Court deems it unreasonable to include clerical overhead in the fee award. Accordingly, the 59.3 hours of paralegal work indicated on Plaintiff's invoice are excised from the lodestar amount. ($125.00 x 59.3 hrs. = $7,412.50 reduction.) Preliminarily, the Court notes that it considers the fee rate for each individual attorney to be appropriate considering their respective level of experience. The number of hours billed are likewise arguably reasonable. Therefore, the lodestar amount in this matter is $219,455.00.

As discussed above, this calculation does not end the inquiry." *Hensley*. 461 U.S. at 434. The Court also must look to "other considerations that may lead the district court to adjust the fee upward or downward." *Id*. at 434, 436. Of the *Johnson* factors, the Court is particularly informed by the degree of success obtained, the time and labor required, and the novelty of the question at hand. The Court will address each factor in turn.

**A. Degree of Success Obtained**

The controlling analysis in evaluating reasonableness of attorney fees is described in *U.S v. Hensley*. 461 U.S. at 436, 103 S.Ct. 1933. As the Sixth Circuit has noted, *Hensley* 'focuses on the bottom line: 'the most critical factor is the degree of success obtained…where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Hensley* at 435, 436.) The bottom line in this case is this: Plaintiff sought an award of back pay and compensatory damages in the amount of, at least, $50,000. After two years of litigation, the jury awarded Plaintiff $13,000 in back pay and no compensatory damages, or about 26% of what Plaintiff requested at

trial. Counsel for Plaintiff are now seeking $226,867.50 in attorney fees and $2,259.42 in expenses. In other words, Plaintiff's counsel seeks approximately 1,762% more in attorney fees and expenses than a jury awarded their client. Plaintiff cannot be said to have obtained an excellent result simply by virtue of winning the case. Plaintiff's goal was not only to win a trial, but it was also to recover relief for the harm visited on her by the actions of the Defendant. In this case, the jury awarded her about one quarter of the relief that she believed that she was entitled to, which can hardly be defined as an excellent result. *See Wheat v. Benton Cty., Tenn.,* No. 1:08-CV-01171-JDB-EG, 2010 WL 908653, at *4 (W.D. Tenn. Feb. 10, 2010) (Employment case wherein the court reduced the lodestar amount by 40% because of minimal success at trial. The Court noted that the attorney fees represented an amount more than 10 times the recovery of the Plaintiff which the court found to be fair and reasonable.); *see also Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, No. 3:14-CV-00397, 2017 WL 4270754, at *2 (E.D. Tenn. Sept. 26, 2017) (In part weighing the counsel's degree of success, the district court determined that to award counsel fees in an amount sixteen times what the jury awarded the plaintiff was excessive.)

In arguing that they are entitled to their requested fees, counsel for Plaintiff point to another employment case, *Grayson v. Madison County*, Docket No. 19-cv-01136. That case concerned a FLSA claim wherein Plaintiff's attorney negotiated a $1.25 million class settlement. The Court reduced counsel's requested fee from 40% of the settlement amount to 30%, noting that counsel had achieved a great deal of success on behalf of the client which warranted an upward adjustment, but concurring with other courts that a 40% fee was "eyebrow-raising." Unlike that case, which was resolved speedily and resulted in a 1.25-million-dollar settlement, the degree of success here militates against an increase in the lodestar amount.

The level of success in the case is further diminished by the case's duration and the number of hours devoted to it.  Of course, while both parties attempt to pin one another with responsibility for delaying the case and not reaching an equitable settlement, they both bear some responsibility for their intractable positions.  In Defendant's case, they ignore the relevance of a statutory fee shifting provision in determining a settlement amount, focusing solely on Plaintiff's recovery as the determining factor.  However, the Court questions the reasonableness of entering the initial mediation with an offer of $250,000, or of entering the judicial settlement conference with a settlement offer of $300,000.

The Court further observes that, in bolstering their level of success, Plaintiff's counsel make multiple references to "defeating" Defendant on summary judgment.   However, such phrasing is inappropriate considering the non-moving party cannot be said to prevail or defeat another party on summary judgment.  Non-moving parties merely live to fight another day if the court determines that evidence presents a sufficient disagreement to require submission to a jury.  Choosing to go to trial after failing to resolve the case on a motion for summary judgment therefore should not reflect on the success of either party and should certainly not be characterized as a "gamble" on the part of the Defendant, another inappropriate characterization because it is suggestive of bad faith on the part of Defendant.

### B. Novelty and Difficulty

This case was not particularly novel or complex.  It was a "relatively run-of-the-mill" retaliation claim under the TPPA and Section 504 of the Rehabilitation Act.  *See Lensing v. Potter*, No. 1:03-CV-575, 2015 WL 10892073, at *9 (W.D. Mich. Aug. 20, 2015) (reducing requested attorney fee in Title VII retaliation case, finding in part that the low novelty and difficulty of the case did not warrant more.)  Both statutes involved virtually identical elements, most of which

were conceded, leaving the sole issue at trial whether there was a causal connection between the protected activity in question and the adverse action. Essentially, the trial came down to the credibility of the witnesses – not any complex questions of law or fact. Indeed, the non-legal, fact-intensive nature of the inquiry precluded disposition at summary judgment. The Court found that there was a genuine issue of fact as to whether Defendant retaliatorily discharged Plaintiff and whether the reasons cited by Defendant were pretextual. Thus, the case was only appropriate for determination by a jury which had to determine whether Plaintiff was retaliatorily fired by Defendant for reporting an alleged breach of the law to the state, or because of some other non-retaliatory reason. Undercutting Plaintiff's assertion that the case involved complex issues regarding children's IEPs, the substance of the IEPs and whether or not Defendant actually breached students' IEPs was irrelevant – a point that Plaintiff herself emphasized in her motions *in limine*. As in most other employment retaliation cases, Plaintiff was required to apply the *McDonnell Douglas* standard with which Plaintiff's counsel are no doubt extremely familiar given their extensive expertise in this area. Further, the Court notes that this case required only about six depositions, roughly the same number of witnesses, a relatively small universe of documents, and that trial lasted less than three full days. Moreover, given the simple nature of the case and Plaintiff's counsel's extensive experience, they must have had reasonable expectation of the limited universe of documents and witnesses necessary to request in discovery to litigate this case. Accordingly, the relative lack of complexity correlates with a lower level of skill necessary to try this case to verdict.

    C. **Time and Labor**

Given the relative lack of complexity and novelty in this case and the commensurately lower skill necessary to try this case, the Court finds that the simultaneous use of more than two

attorneys, particularly Plaintiff's frequent use of at least three attorneys, is excessive. For instance, the Court notes that Plaintiff's invoice indicates that three attorneys attended the trial and billed for its duration including the time expended waiting for the jury's verdict. This, notwithstanding the fact that only two attorneys, Charles Barnett, III and Sara Barnett participated in the trial insofar as making argument, objections, and examining witnesses. Both attorneys are very experienced and specialize in trial practice and employment litigation. Therefore, the use of more than two lawyers for the bulk of trial prep, depositions, and the trial itself is "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939–40, 76 L. Ed. 2d 40.

Plaintiff also argues that significant time was expended preparing this case because parties had to prepare for trial twice given that the trial was continued close to the trial date because of COVID-19. However, the Court notes that parties requested that the trial be continued on March 24, 2020, nearly two months before the May 18, 2020 trial date. The invoice confirms that little work on the case was undertaken in the month of March. Consequently, this argument is unavailing in proving that significant amounts of time and labor were reasonably expended in the case.

### D. Remaining Relevant Factors

As Plaintiff notes, the fact that this case was taken on a contingent basis weighs in Plaintiff's favor. Likewise, the Court is familiar with Plaintiff's counsel and greatly credits their experience, reputation, and ability. Plaintiff's counsel have also seemingly cultivated a good relationship with Plaintiff and worked diligently to take this case to verdict for several years. As to the "undesirability" of the case, the Court credits the affidavits of Plaintiff's counsel, Michael Weinman and Justin Gilbert, but notes that, just because "this area of litigation is not the most profitable pursuit," does not mean that it is lacking in profit. Employment retaliation and

discrimination cases involving a single plaintiff are relatively common in this court and their prevalence suggests a willingness of attorneys to take these types of case.

### E.  Costs and Expenses

Plaintiff requests non-taxable costs and expenses in the amount of $2,259.42. Defendant notes that the bulk of the costs sought by Plaintiff are related to the costs of the mediation. Defendant argues that it should not be required to pay Plaintiff's portion of the mediation costs, because Plaintiff did not make reasonable efforts to settle the case at mediation.  According to Defendant, Plaintiff made an initial offer of $250,000 during the first mediation notwithstanding the fact that Plaintiff had only accrued attorney fees in the amount of $24,000.  Plaintiff does not deny this but returns that Defendant's initial offer was a mere $2,500.  As discussed above, the Court will not place the responsibility for not settling this case at the feet of any single party. Defendant is therefore bound to pay non-taxable costs and expenses in the amount of $2,259.42 as per the relevant portions of the Rehabilitation Act and the TPPA.

## **CONCLUSION**

For the foregoing reasons, particularly in view of the limited degree of success obtained, the time and labor required, and the non-novel nature of the question at hand, the Court finds that a further reduction of forty percent (40%) to the lodestar amount of $219,455.00 is appropriate and warranted.  Therefore, Plaintiff shall be entitled to $131,673.00 in attorney fees in addition to $2,259.42 in non-taxable costs and expenses.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  September 1, 2021.