IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SYREETA A. HERRON,

    Plaintiff,

V.                                                              Case No. 1:19-cv-01034-STA-jay

TRENTON SPECIAL SCHOOL DISTRICT,

    Defendant.

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR AWARD OF FRONT PAY**

Before the Court is Plaintiff's Motion for Award of Front Pay (ECF No. 92) filed on July 1, 2021. Also before the Court is Defendant's Response in Opposition (ECF No. 96) and Plaintiff's Reply (ECF No. 102). Plaintiff seeks an award of front pay in the amount of $24,947 in lieu of reinstatement. For the following reasons, Plaintiff's Motion is **GRANTED in part**.

**BACKGROUND**

On June 24, 2021, a jury returned a verdict in favor of Plaintiff, finding that Defendant retaliated against her in violation of Section 504 of the Rehabilitation Act and the Tennessee Public Protection Act. The jury awarded Plaintiff $13,000 in back pay and declined to award compensatory damages. At trial, parties agreed to have the Court determine the amount of front pay warranted, if any.

Plaintiff argues that she is entitled to an award of front pay, given that Defendant has stated that reinstatement is impossible. She states that she had worked for Trenton Elementary School "off and on" for thirteen years and had every expectation of continuing to work there for many years prior to her unlawful termination. Following the non-renewal of her contract, Plaintiff

attempted to mitigate her damages by taking a number of jobs but was unable to find a comparable position in the area where she lives. Plaintiff was apparently able to find comparable employment as a paraprofessional with Isaac Lane Elementary School but argues that the job was not equivalent because it required her to make a sixty-mile roundtrip every day. She was employed there from August 2019 to July of 2020 and made $12.55 per hour. Plaintiff was also briefly employed for four months with the Milan School District, located approximately twelve miles from her home, earning $12.35 an hour. Plaintiff argues that the job was not equivalent to her job at Trenton Elementary School, because the position consisted of working, not with pre-K special education children, but with high school students at an alternative school, a role she described as that of a "jailer for troubled teens." Unsatisfied with that position, Plaintiff returned to work at Isaac Lane Elementary School from September 2020 to May 2021, notwithstanding the long commute. Plaintiff is currently employed with the Tennessee Department of Motor Vehicles, earning $13.34 per hour. She contends that this position is similarly not equivalent to her previous position with Defendant because she is only able to work twenty-five hours a week, has no benefits, and the position is not in her chosen field of work as a teacher assistant for children with special needs.

     Plaintiff calculates her proposed front pay amounts by relying principally on her pay per hour. Plaintiff currently works twenty-five hours a week earning $13.34 per hour which amounts to $333.50 a week. While at Trenton Elementary School, Plaintiff worked thirty-five hours per week earning $13.28 per hour and $464.80 per week. The difference between her weekly pay is thus $131.30. At her previous job with Defendant, Plaintiff worked thirty-eight weeks a year, resulting in a disparity of $4,989.40 ($131.30 times thirty-eight [weeks]). Plaintiff suggests that front pay should reasonably be awarded for five years given "the circumstances of the case, and the fact that Ms. Herron is unable to find a job in her chosen field."

Defendant in turn argues that Plaintiff is not entitled to front pay because she has no expectation of continued employment beyond the 2017-2018 school year; because her taxable income is higher than the income she received while employed by Defendant; and because she failed to mitigate her damages by not remaining at either of the three comparable positions referenced above.

## ANALYSIS

"Front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. Dupont de Nemours, Inc*., 338 F.Supp.2d 865, 881 (W.D. Tenn. 2003). Courts generally award front pay when reinstatement is inappropriate or infeasible. *Suggs v. ServiceMaster Educ. Food Mgmt*., 72 F.3d 1228, 1234 (6th Cir. 1996). Thus, the remedies of reinstatement and front pay are alternative, rather than cumulative. *Id*. Determination of when to award front pay is within the discretion of the trial court. *Id*. The Sixth Circuit has stated that the following factors are relevant in determining whether an award of front pay is appropriate: (1) the employee's future in the position from which he was terminated; (2) his work life expectancy; (3) his obligation to mitigate damages; (4) the availability of comparable employment opportunities and the time reasonably required to find substitute employment; (5) the discount tables to determine the present value of future damages; and (6) other factors that are pertinent in prospective damage awards. *Id*.

Here, Defendants have stated that reinstatement is impossible, so front pay is an appropriate remedy. The question before the Court is the amount necessary to compensate Plaintiff for the post-judgment effects of the discrimination visited on her by Plaintiff. The Court notes that, as Plaintiff points out, it has already addressed the question of whether Plaintiff can still be entitled to front pay despite being an at-will employee. As the Court has previously found, that fact alone

does not preclude Plaintiff from entitlement to front pay, but it is a factor the Court may consider in determining an equitable remedy. *Schwartz v. Gregori*, 45 F.3d 1017 (6th Cir. 1995). Here, Plaintiff worked for Trenton Special School District on and off for thirteen years and it is apparently virtually the only employer for the type of work that Plaintiff wishes to do in the area where she lives. Those circumstances create a clear expectation, first, that Plaintiff would have continued working there but for her termination and, second, that Defendant would likely not have non-renewed Plaintiff but for her engaging in protected activity. Thus, the facts in this case mitigate in favor of an award of front pay, notwithstanding Plaintiff's status as an at-will employee.

As to Defendant's second point, that Plaintiff is not entitled to front pay because her taxable income is higher that the income she received while employed by Defendant, such an argument is unavailing, primarily because it pertains more directly to back pay than to front pay. The argument is also reductive, assuming that Plaintiff was made whole merely by virtue of earning more money in the years after being non-renewed by Defendant. Furthermore, Plaintiff is correct in that the more accurate approach is to compare Plaintiff's earnings to what she would have earned had she not been terminated instead of what she earned the previous year. From the former perspective, it is clear that Plaintiff made less money, not more, after being terminated. The purpose of front pay is to put an injured party in the same position the party would have occupied in the absence of the discrimination. *Suggs v. ServiceMaster Educ. Food Management*, 72 F.3d 1228 (6th Cir. 1996). The purpose is not to put Plaintiff back in the position that she was in the year before the discriminatory act.

Next, the Court considers Defendant's third argument, that Plaintiff is not entitled to front pay because she failed to mitigate her damages. The proof at trial showed that Plaintiff made diligent efforts to mitigate her damages by working at various jobs, some of which were broadly

in her chosen field. The Court finds that the jobs at Isaac Lane Elementary School and the Milan School District are not the equivalent of or even comparable to her previous position as a teacher assistant for pre-K students with disabilities. In the case of the former, the position was located outside of the county where Plaintiff lives and necessitates a 60-mile daily commute which comes with accompanying costs, both financial and personal. As to the position with the Milan School District, that cannot be said to be comparable merely because it is broadly in the field of education. As Plaintiff testified, working at an alternative high school for troubled teenagers is not reasonably comparable to pre-K education of young children with disabilities. The Court agrees. The Court further concurs with Plaintiff's proposed methodology for calculating the front pay amount by multiplying the difference between Plaintiff's weekly earnings now versus when she was employed with Trenton Elementary School ($131.30) by the number of weeks that she worked per-year (thirty-eight). Given that the proof at trial indicated that Plaintiff had the expectation of a long future with Trenton Elementary School, that there is low availability of comparable employment outside of the Trenton School District in the area where Plaintiff lives, that she has as yet been unable to find comparable employment, and that she will need additional time to do so, the Court finds that four years is a reasonable amount of time to find comparable employment. (4,989.40)

## **CONCLUSION**

Accordingly, for the foregoing reasons, the Court awards Plaintiff front pay in the amount of $19,957.60 ($4,989 multiplied by four) to be paid by the Defendant. Also before the Court is Plaintiff's Motion to Alter or Amend Judgment (ECF No. 95) wherein Plaintiff requests that the Court strike or amend the judgment to incorporate the award of front pay and stating that the jury found in favor of the Plaintiff in the amount of $13,000 and that the Court enters a judgment against

the Defendant in that amount.  For good cause shown, the Motion is **GRANTED**.  The Judgment (ECF No. 91) is struck from the record.  A new Judgment shall issue upon entry of this order.

    **IT IS SO ORDERED**.

                                        **s/ S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        CHIEF UNITED STATES DISTRICT JUDGE

                                        Date:  September 17, 2021.